UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANKIE KING,

            Plaintiff,

v.                                                    CASE NO. 3:09-cv-00816-J-JBT

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

            Defendant.
_____/

## ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her applications for a Period of Disability, Disability Insurance

Benefits ("DIB"), and Supplemental Security Income ("SSI"). For the reasons stated

herein, the Commissioner's decision is due to be **AFFIRMED.**

### I.        Issues on Appeal and Summary of Decision

As stated by Plaintiff, the issues on appeal are whether the Administrative Law

Judge ("ALJ") "failed to articulate good cause for not crediting the treating opinion

of Dr. Park," and whether the ALJ's "rationale for discrediting Dr. Yates' examining

opinion" was supported by substantial evidence. (Doc. 20 at 1.)

The Court upholds the ALJ's decision and rejects both of these grounds for

reversal and remand. The ALJ correctly noted that Dr. Park's conclusory opinion

that Plaintiff was "unable to work" was not a medical opinion, and, therefore, was not

entitled to significant weight. (Tr. 17.) Nevertheless, the ALJ did not ignore Dr.

_____

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge. (Docs. 16 & 17.)

Park's opinion.   Rather, he properly considered it and explained his basis for rejecting it.  Furthermore, the ALJ was not obligated to recontact Dr. Park.  Such an obligation exists if the ALJ is unable to ascertain the basis for the opinion.  Here, however, the ALJ was able to obtain the basis for Dr. Park's opinion based on his treating records.  Therefore, there was no need to recontact Dr. Park.

In addition, there was substantial evidence to support the ALJ's decision to reject much of Dr. Yates' opinion.   Dr. Yates was a one-time examiner, and, therefore, his opinion was not entitled to any special deference.  The ALJ's obligation was to consider Dr. Yates' opinion, state what weight he was affording it, and explain why.  *See McCloud v. Barnhart*, 166 Fed. App'x 410, 418 (11th Cir. Jan. 25, 2006) (per curiam).  The ALJ met this standard.  He stated that he was giving Dr. Yates' assessment "limited weight as a one-time examining source." (Tr. 15.) He accepted some of Dr. Yates' opinions, but not all of them.  (Tr. 12-15, 18.)  He weighed such opinions against the other record evidence and explained why he was rejecting some of them.  (Tr. 12-15.)  This finding is supported by substantial evidence.  Therefore, the ALJ's decision is due to be affirmed.

## II.     Procedural History and Summary of the ALJ's Decision

On April 17, 2006, Plaintiff protectively filed applications for a Period of Disability, DIB, and SSI, alleging disability beginning on June 1, 2005.  (Tr. 105-07, 119-30, 150-52, 176-78.)  The Social Security Administration ("SSA") denied these applications initially and upon reconsideration.  (Tr. 49-64, 67-71.)  Plaintiff then

requested and received a hearing before the ALJ on April 3, 2008, during which she was represented by an attorney.  (Tr. 21-48, 72, 74-75, 84-90.)  At the hearing, the ALJ heard testimony from Plaintiff and a Vocational Expert ("VE"), Donna Mancini. (Tr. 21-48.)

On May 13, 2008, the ALJ issued his decision, finding Plaintiff not disabled and denying her claim. (Tr. 6-20.)  The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008. (Tr. 11.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2005. (*Id*.)  At step two, the ALJ determined that Plaintiff had "the following severe impairments: disorders of the spine and shoulder; affective disorder; personality disorder; borderline intellectual functioning." (*Id*.)  In making this finding, the ALJ accepted Dr. Yates' opinion that Plaintiff suffered from borderline intellectual functioning.  (Tr. 12.)  However, he rejected Dr. Yates' opinions that Plaintiff also had the severe impairments of "anxiety disorder" and "learning disorder."   (Tr. 13.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)  In engaging in the step three analysis, the ALJ found that Plaintiff had no more than a mild restriction in her activities of daily living; that she had mild to moderate difficulties in social functioning; and that she had mild to moderate difficulties with regard to

3

concentration, persistence or pace.  (Tr. 13-14.)  The ALJ concluded that based upon the "combined limiting effects of [Plaintiff's] affective disorder and borderline intellectual functioning," Plaintiff should be "restricted to low stress simple tasks." (Tr. 15.)  In addition, he found that as a result of Plaintiff's affective disorder and personality disorder, Plaintiff should be "restricted to no more that [sic] limited contact with the public."  (*Id*.)

Next, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") "to perform low stress, simple task light work . . . with a need to avoid: ladders or unprotected heights; operation of heavy moving machinery; reading; more than limited contact with the public; pushing/pulling with the right arm."  (Tr. 16.)

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work.  (Tr. 17.)  At step five, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 18.)  Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from June 1, 2005 through the date of the decision, May 13, 2008.  (Tr. 19.)

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied on June 12, 2009.  (Tr. 1-5.)  Accordingly, the ALJ's May 13, 2008 decision was the final decision of the Commissioner.  On July 30, 2009, Plaintiff timely filed her Complaint in this Court.  (Doc. 1.)

4

### III.     Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520, 416.920.   The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[2]

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the

---

[2] The law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *see also McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Summary of Record Evidence

Although Plaintiff's physical and mental conditions may be related, the Court will discuss each one in turn.

### A. Plaintiff's Physical Condition

The ALJ found that Plaintiff had the severe impairments of "disorders of the spine and shoulder." (Tr. 11.) Plaintiff had a number of diagnostic tests regarding her spine and shoulder. An MRI of the spine without contrast performed on January

18, 2006 showed "[m]ild degenerative disk disease with mild diffuse disk bulges at the L3-4 and L4-5 levels." (Tr. 206.) On May 8, 2006, x-rays of Plaintiff's shoulders revealed "[n]ormal bilateral shoulders." (Tr. 262.) On May 24, 2006, an MRI of Plaintiff's cervical spine was read as "[e]ssentially unremarkable MRI of the cervical spine." (Tr. 257.) On October 24, 2006 bilateral x-rays of Plaintiff's shoulders showed "[n]o appreciable change since [May 8, 2006]." (Tr. 304.) On November 30, 2007, Plaintiff complained of "[n]eck pain after a motor vehicle accident." (Tr. 331.) A non-contrast CT of her cervical spine was read as "unremarkable." (*Id.*) On December 18, 2007, another CT of Plaintiff's cervical spine was read as "[n]ormal." (Tr. 321.)

Aside from emergency room visits, Plaintiff's treatment records consisted primarily of records from Quality First Care from April 17, 2006 through October 26, 2006. (Tr. 248-78.) On May 6, 2006, Plaintiff presented to Quality First Care with both physical and psychological complaints. (Tr. 264.) She was referred to Meridian Behavioral Health Care, Inc. ("Meridian") for her psychological complaints, specifically her complaints of "uncontrollable rage" and "severe depression." (*Id.*) She continued to treat at Quality First Care for her physical complaints, including "pain in both shoulders" and in her back. (*Id.*) It was noted on May 6, 2006, that Plaintiff was "taking no medications." (*Id.*)

Plaintiff was seen at Quality First Care on May 23, 2006, May 30, 2006, August 23, 2006, September 20, 2006, October 12, 2006, October 19, 2006 and

October 26, 2006.  (Tr. 248-50, 252-53, 256, 260.)  During these visits, Plaintiff received prescriptions for pain medications as well as intramuscular injections.  (*Id.*)  On September 22, 2006, Dr. Park filled out a form indicating that Plaintiff's conditions of osteoarthritis of the lumbar spine and degenerative disc disease did not permit Plaintiff to work even with restrictions.  (Tr. 251.)  Dr. Park also indicated on the form that Plaintiff could not participate in other activities, such as classroom activities or volunteer work.  (*Id.*)  He opined that this condition was "temporary" and of an estimated duration of twelve months.  (*Id.*)  He did not answer the question whether a treatment plan had been prescribed.  (*Id.*)

Dr. Timothy McCormick performed a consultative examination on August 24, 2006.  (Tr. 211-18.)  He concluded that Plaintiff had "some tenderness in the low lumbar areas and sacroiliac area bilaterally," but otherwise her examination was "essentially normal."  (Tr. 213-14.)  Dr. Robert Steele completed a physical RFC assessment on September 6, 2006.  (Tr. 224-31.)  He essentially restricted Plaintiff to medium work and concluded that the severity of Plaintiff's symptoms and their alleged effect on her functioning were "disproportionate" with the medical evidence.  (Tr. 229.)  A second physical RFC assessment was done by Dr. David Guttman on January 29, 2007.  (Tr. 279-86.)  He also essentially restricted Plaintiff to medium work and concluded that Plaintiff's symptoms and their alleged effect on her functioning was "partially credible with benign exam not fully supporting allegations."  (Tr. 284.)

### B.    Plaintiff's Mental Condition

On July 13, 2005, Plaintiff presented to the emergency room at Northeast Medical Center in Concord, North Carolina, complaining that she needed medicine for her blood pressure.  (Tr. 184-85.)  She stated that she felt "very stressed out" because she was taking care of "both an ill sister and her chronically ill mother."  (Tr. 184.)  Testing of her blood pressure showed it to be normal, and the doctor's impression was "[a]nxiety/depression."  (Tr. 185.)

On August 7, 2006, Dr. Umesh Mhatre performed a psychiatric consultative evaluation of Plaintiff.  (Tr. 219-22.)  Dr. Mhatre stated: "The patient's primary problem for not working is her bad back.  Her depression seems to be somewhat worse at this time, because of her sister's death.  She reports she has no money to get treatment for her depression."  (Tr. 222.)  Dr. Mhatre's Axis I impression was "[d]ysthymia with [a]nxiety" (*Id*.)

Dr. Thomas Conger, Ph.D. completed a Psychiatric Review Technique on September 7, 2006.  (Tr. 232-45.)  He concluded that Plaintiff had no severe mental impairments, and stated: "Although [Plaintiff] may experience some mild depression and/or anxiety symptoms at times, she remains fully functional from a mental perspective.  She is able to relate in a socially appropriate manner and also displays an overall adequate Mental Status."  (Tr. 244.)

A second Psychiatric Review Technique was performed by Dr. Joseph Peterson, Ph.D., J.D., on February 7, 2007.  (Tr. 287-300.)  He also concluded that

9

Plaintiff did not have any severe mental impairments. (*See id.*) He noted that Plaintiff had received no known psychiatric treatment or medications, other than possible scattered emergency room contacts without follow-up. (Tr. 299.) He concluded that the record to date showed only "mild/moderate Adjustment Reaction [and]/or possible residual PTSD arising [within] a generally unhappy/dissatisfied/dysthymic individual." (*Id.*)

Plaintiff did begin mental health treatment on May 15, 2007 at Meridian "to help her deal with grief over her mother's death." (Tr. 356.) Plaintiff "reported that her mother [had] died in mid-April 2007." (*Id.*) Plaintiff stated that she was "not working due to pain in her shoulders." (*Id.*) The diagnostic impression at that time as to Axis I was "Major Depressive Disorder, recurrent, moderate," and "Anxiety disorder, NOS." (Tr. 358.)

Plaintiff's treatment with Meridian continued on May 31, 2007, June 21, 2007, July 26, 2007, October 1, 2007, October 22, 2007, October 23, 2007, and January 16, 2008. (Tr. 337-55, 363.) On June 21, 2007, Plaintiff indicated that she felt her anxiety was helped by taking Soma, that her sleep had improved with Seroquel, that her appetite had improved, and her anxiety was "a bit better since starting medications." (Tr. 349.) Plaintiff reported that her sister had told her that Plaintiff was not as upset about stressors since she had started taking medications. (*Id.*) The treatment plan included the continuance of Prozac and Seroquel. (*Id.*) The continuing treatment at Meridian consisted primarily of prescribing and managing

Plaintiff's medications.

On March 6, 2008, Plaintiff presented for a psychological evaluation by Dr. Philip Yates, Ph.D.   (Tr. 366-71.)   Dr. Yates concluded from his testing and examination of Plaintiff that she was "illiterate," that she was in the "[m]ild range of [m]ental [r]etardation," and that she had "[b]orderline range memory."  (Tr. 370.) Further, he concluded based on his mental status examination and review of her history that she was "suffering from a protracted, severe depression, accompanied by anxiety, [and] feelings of hopelessness and helplessness."  (*Id*.)  He concluded: "It would be extremely difficult for this individual to independently obtain and maintain employment from an emotional standpoint and once in a work setting, she would have great difficulty maintaining work output unless she were in a setting that was predominantly physical in nature."  (*Id*.)

### C.    Plaintiff's Hearing Testimony

At the April 3, 2008 hearing before the ALJ, Plaintiff testified she went up to "the seventh or eighth grade" in school.  (Tr. 25.)  She stated that a motor vehicle accident on November 30, 2007, had "messed [her] shoulder up."  (*Id*.)  She was going to a chiropractor twice a week and she could not lift anything heavy with her shoulder.  (Tr. 26.)

Plaintiff had last worked "eight, nine years ago" at a nursing home doing maintenance work.  (Tr. 28-29.)  She was not taking any prescription medications. (Tr. 29.)  She filled her time trying to clean the yard or do something to keep busy.

(*Id.*)  She could do housework.  (*Id.*)  She could also do laundry, vacuum, and take out the trash, but all with one hand.  (Tr. 29-30.)

She testified she could spell her name, sign a check and count change, but not read a newspaper.  (Tr. 31.)  When asked by the ALJ if there was anything she thought he should know about her, she replied "[y]eah, I got a bad temper."  (Tr. 34.)

## V.    Analysis

### A.    The ALJ's Treatment of Dr. Park's Opinion

Plaintiff argues that the ALJ failed to articulate good cause for rejecting Dr. Park's opinion, and, further, that the ALJ had an obligation to recontact Dr. Park. (Doc. 20.)

As indicated, Dr. Park opined that Plaintiff could not work due to her osteoarthritis of the lumbar spine and degenerative disc disease.  (Tr. 246.)  In addressing this opinion, the ALJ stated:

> The [ALJ] has not attached any significant weight to this opinion as it is unaccompanied by objective medical evidence.  Furthermore, a report that an individual is "unable to work" is not a medical opinion under the Social Security regulations, but rather, is a legal conclusion left to the [ALJ].

(Tr. 17 (citations omitted).)

In considering Plaintiff's arguments, ample authority is provided by the Eleventh Circuit, the applicable SSA regulations, and SSR 96-5p.  First, 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1) make clear that opinions from a medical source that a person is "disabled" or "unable to work" are not determinative because that is

the ultimate issue reserved to the Commissioner.  SSR 96-5 provides further guidance.  That ruling indicates that even when such opinions are "offered by a treating source, they can never to entitled to controlling weight or given special significance."  SSR 96-5p.  Nevertheless, such opinions "must never be ignored." *Id.*  The ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.*  Furthermore, if the basis for such an opinion is not clear, the ALJ must use "every reasonable effort to recontact the source for clarification of the reasons for the opinion." *Id.* (internal quotation marks omitted).  However, this requirement applies only when "the adjudicator cannot ascertain the basis of the opinion from the case record." *Id.* Finally, the ALJ's decision "must explain the consideration given to the treating source's opinion(s)." *Id.*

In this case, the ALJ followed all of the above dictates.  First, he noted that the opinion was on an issue reserved to the Commissioner, and, thus, not entitled to controlling weight or special significance.  Nevertheless, he did not ignore it.  He addressed it and rejected it as "unaccompanied by objective medical evidence." (Tr. 17.)  There was substantial evidence to support this finding as there was little, if any, objective medical evidence that Plaintiff's osteoarthritis of the lumbar spine and degenerative disc disease completely precluded Plaintiff from any type of work. As the ALJ was required to do, he evaluated all the evidence in the record to determine the extent to which the opinion was supported.

Furthermore, the ALJ was required to recontact Dr. Park only if he could not ascertain the basis of Dr. Park's opinion from the record.  The ALJ never  indicated that he could not ascertain the basis for the opinion; rather, he merely indicated he believed the opinion was unsupported. The ALJ had the treatment records of Dr. Park, along with a number of diagnostic tests of Plaintiff's neck, lumbar spine, and shoulders.  Further, he had Plaintiff's emergency room records, a consultative physical examination, and two RFC determinations.  Thus, there was no obligation on ALJ's part to recontact Dr. Park.

In *Phillips v. Barnhart*, 357 F3d. 1232, 1240 (11th Cir. 2004), the Eleventh Circuit reiterated that "good cause" must exist to reject the opinion of a treating physician.  The court stated that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241.

In this case, the ALJ had good cause to reject Dr. Park's opinion on all three grounds.  First, as discussed, the opinion was conclusory and on an issue reserved to the Commissioner.  *See, e.g.*, *Bell v. Bowen*, 796 F.2d 1350, 1354 (11th Cir. 1986) (per curiam) (holding that the ALJ had good cause to reject a treating doctor's conclusory statement that the claimant was "totally disabled" because the statement was "not explained by [the doctor's] medical findings").  Moreover, substantial evidence supports the ALJ's conclusion that Dr. Park's opinion was not bolstered by

14

the evidence and that the evidence supported a contrary finding.   Thus, the Commissioner's decision is due to be affirmed on this issue.

### B.   Substantial Evidence Supported the ALJ's Decision to Reject Dr. Yates' Opinions in Part

Plaintiff next argues the ALJ erred in declining to adopt all of Dr. Yates' opinions.  (Doc. 20.)

In his decision, the ALJ accepted portions of Dr. Yates' reports, but rejected others.   For example, he included the impairment of "borderline intellectual functioning" and stated that he had "resolved doubts in the claimant's favor based on the psychometric testing performed by Dr. Yates."  (Tr. 12.)  However, the ALJ considered and rejected the impairments of anxiety disorder and learning disorder. (Tr. 13.)  The ALJ found that Plaintiff's anxiety appeared to be controlled with medication, and that Plaintiff had not identified any significant work-related limitations resulting from any anxiety disorder.  (*Id*.)  As to the learning disorder, the ALJ noted that: "Dr. Yates is the only individual of record who diagnosed the claimant with a learning disorder, and he did not describe what he meant by this." (*Id.*)

The ALJ also noted that he was accepting Dr. Yates' conclusion that Plaintiff was functionally illiterate.  (Tr. 18.)   In analyzing Dr. Yates' opinions further, he stated:

> Although Dr. Yates made much of the claimant's limitations resulting from her level of intellectual functioning, the [ALJ] has not assessed

15

greater limitations, as the claimant has demonstrated the ability to work at the presumptive level of substantial gainful activity notwithstanding any reduced levels of intellectual functioning.

Based on the combined limiting effects of the claimant's affective disorder and personality disorder, the [ALJ] finds that she has been restricted to no more that [sic] limited contact with the public. In reaching these conclusions, the [ALJ] has given Dr. Yates' assessment limited weight as a one-time examining source.

(Tr. 15.)

In *McSwain v Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam), the Eleventh Circuit noted that opinions of "one-time examiners" were "not entitled to deference" because "they were not treating physicians." Further, in *McCloud*, the Eleventh Circuit stated: "The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why." 166 Fed. App'x at 418 (internal citations omitted).

In this case, the ALJ thoroughly analyzed the opinions of Dr. Yates, weighed them against the other evidence, and found some of them supported by the evidence and others not supported. Further, he specifically stated the weight he gave Dr. Yates' opinions. There was substantial evidence to support the ALJ's rejection of several of Dr. Yates' opinions as a one-time examiner. For example, the ALJ noted that despite Dr. Yates' assessment of Plaintiff's limitations resulting from borderline intellectual functioning and learning disorder, Plaintiff "has demonstrated the ability to work at the presumptive level of substantial gainful activity

16

notwithstanding any reduced levels of intellectual functioning." (Tr. 15.)

Further, Plaintiff contends that "[t]he ALJ also seemed to gloss over the meat of the Meridian Behavioral records." (Doc. 20 at 13.)  Again, the Court disagrees. The ALJ specifically noted and considered those records.  He stated that Plaintiff had been evaluated by multiple mental health sources and had received a variety of diagnoses.  "The only evidence of ongoing treatment was grief counseling after the death of her mother." (Tr. 12.)  The ALJ noted further that Plaintiff was not seen at Meridian until May 2007.  (*Id.*)  The ALJ noted that the Meridian records showed that Plaintiff was diagnosed with major depressive disorder and anxiety disorder, and that Plaintiff's intellectual functioning was "low average." (*Id.*)  The ALJ also noted that the records indicated that the medications appeared to be helping with Plaintiff's depression and anxiety. (*Id.*)  The ALJ also considered the opinions from the state agency consultants and Dr. Mhatre. (*Id.*)

In short, the ALJ's RFC finding, including the extent of the physical and mental limitations he imposed, is supported by substantial evidence.  Psychologically, he limited Plaintiff to positions involving low stress, simple tasks, with a need to avoid reading, and no more than limited contact with the public.  Substantial evidence supports the ALJ's finding that greater restrictions were not required.

## V.    Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not

whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on appropriate legal standards and are supported by substantial evidence. Based on these standards, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is due to be affirmed.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

2.     The Clerk of Court is **DIRECTED** to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on February 23, 2011.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

Counsel of Record